[Civ. No. 4597. First Appellate District, Division One.—September 21, 1923.]

## STEVEN ANDERSON, Appellant, v. MARTIN ARONSOHN et al., Respondents.

[1] NOTARY PUBLIC—NEGLIGENCE—CERTIFICATES OF ACKNOWLEDGMENT —ACTION FOR DAMAGES — FORMER APPEAL — SIMILARITY OF EVIDENCE.—In this action against a notary public and the sureties on his official bond for damages resulting from the alleged negligence of the notary in taking certain acknowledgments, the evidence is in all substantial respects identical with that given on a former appeal under which it was held that the notary was not legally justified in stating in the certificates of acknowledgment that the persons who appeared before him to acknowledge the instruments in question were known to him.

[2] ID. — ACKNOWLEDGMENT — PERSONAL KNOWLEDGE — LIABILITY OF NOTARY.—If a person who appears before a notary is not personally known to him it is the notary's duty to issue a certificate

---

1. Liability of notary or other officer certifying to acknowledgment or affidavit, notes, 82 Am. St. Rep. 380; 13 Ann. Cas. 717; 49 L. R. A. (N. S.) 45.

2. Proof of identity upon which officer certifying to an acknowledgment is justified in acting, note, 10 A. L. R. 871.

upon the oath of a credible witness instead of one upon personal knowledge, failing in which the notary takes the acknowledgment at his own risk; and personal knowledge is not acquired merely through the introduction of another.

[3] LAW OF CASE—ADHERENCE TO.—Where the appellate court has in its former opinion stated a rule or principle of law necessary to a decision, that rule or principle, under the doctrine of the law of the case, must be followed and observed throughout the subsequent progress of the case both in the lower court and upon subsequent appeals.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Reversed.

The facts are stated in the opinion of the court.

Carl W. Mueller and Alfred Fuhrman for Appellant.

McCutchen, Olney, Mannon & Greene, *Amici Curiae*, for Appellant's Contention.

R. H. Morrow and Marshall B. Woodworth for Respondents.

TYLER, P. J.—Action against a notary and the sureties upon his official bond for damages resulting from the alleged negligence of the notary in taking certain acknowledgments.

The original complaint was filed in August, 1916. The controversy has resulted in three trials. The first was without a jury and judgment went in favor of defendants, but it was reversed by the supreme court (181 Cal. 294 [10 A. L. R. 866, 184 Pac. 12]). The second was had by jury and resulted in a disagreement. Upon the third trial a jury found a verdict in favor of defendants and from the judgment entered thereon plaintiff has taken this appeal.

The facts are succinctly stated by Mr. Justice Lennon in the former appeal to be as follows:

"A few days prior to April 19, 1916, one Ambrose, a real estate agent and loan broker, through whom plaintiff had previously loaned money, called upon the plaintiff to secure a loan of nine hundred dollars upon certain real estate in the city and county of San Francisco owned by Louetta A. Pilliken, for whom Ambrose purported to act. The plain-

tiff having decided to make the loan, a note and deed of trust were given to Ambrose for execution by Mrs. Pilliken and her husband. Ambrose returned the document signed and acknowledged in proper form before the defendant Aronsohn, a notary public, and, upon presentation of an order purporting to be signed by the Pillikens, Ambrose received the amount of the loan in currency. At no time during the transaction did plaintiff deal with anyone save Ambrose. In May of the same year, through a similar transaction, plaintiff advanced to Ambrose the sum of seven hundred dollars upon property owned by one Mary French. Plaintiff subsequently discovered that the owners of the properties in question, the Pillikens and Mary French, had never signed the notes or deeds of trust nor received the money, and that confederates of Ambrose had impersonated these parties before the notary public. The certificates of acknowledgment of both deeds of trust were each to the effect that the subscribing parties were 'known' to the notary to be the persons whose names are subscribed to the instruments. The question presented upon this appeal is whether or not Aronsohn was legally justified in stating in the certificate of acknowledgment that the persons who appeared before him to acknowledge the instruments were known to him.

"It appears that on September 8, 1915, the persons who represented themselves to be the Pillikens were introduced to Aronsohn by Ambrose on the occasion of their assignment of an interest in a mining claim. Aronsohn acknowledged the instrument and certified to the identity of the parties under the oath of Ambrose, who was personally known to him. He made a record of this transaction in his books. We shall here quote the evidence concerning the further acquaintance of Aronsohn with these parties:

" 'Question. Now, did you after this transaction have occasion to meet those two Pillikens again?

" 'Answer. Yes.

" 'Q. Frequently or otherwise?

" 'A. Yes, five or six times.

" 'Q. And where?

" 'A. Met them the following day at the Fair, 1915, Native Sons of the Golden West Day, Admission Day, also at cafeteria, on streets, also was at my office.

" 'Q. When were they at your office?

" 'A. Shortly before April 19, 1916.

" 'Q. For what purpose?

" 'A. Mr. P. called at my office and asked me where he can get a loan on a note, and I suggested him to wait until Morris Plan bank open business, as they were advertising loans at six per cent, etc.'

"It also appears that on March 2, 1915, the person who represented herself to be Mary French was introduced to Aronsohn by his former teacher, Henry Frank. He took an acknowledgment of the signature of this woman, Frank acting as identifying witness. Aronsohn also made a record of this transaction in his books. The following is the evidence of his further acquaintance with this Mary French:

" 'Q. When did you again see Mrs. Mary French, if at all, previous to May 6, 1916?

" 'A. December 2, 1915.

" 'Q. What was the occasion of your meeting Mary French on December 2, 1915?

" 'A. She was at my office with Mr. Ambrose, who requested me to acknowledge a document.

" 'The Court: Did Mr. Ambrose request you to acknowledge a document, or Mrs. French request you to acknowledge a document?

" 'A. Mrs. French.' "

And following this statement of facts the opinion proceeds:

"Basing its conclusion on these facts the trial court has decided that Aronsohn was legally justified in stating in the certificates of acknowledgment that the persons who appeared before him to acknowledge the instruments in question were known to him. With this conclusion we are unable to agree."

The court then held that under such facts the notary was not authorized to certify that he had personal knowledge of the identity of the parties, as a mere introduction followed by the casual meetings narrated did not justify such a certificate; that the degree of acquaintance which would authorize a notary to certify that he had personal knowledge involves something more than mere casual meetings, and must be based upon a chain of circumstances surrounding the person tending to show that he is the party he purports to be.

It was further held that personal knowledge by a notary of a person making an acknowledgment is not acquired by his introduction under oath; and that if the notary certifies that he has personal knowledge of the identity of a person whom he merely knows through the introduction of another he does so at his own risk. It is pointed out in the decision that if a notary takes all due precaution and fully complies with the statute by requiring the oath of a credible witness in a case where he has not sufficient knowledge of the identity of the person making the acknowledgment, he will not be held liable, although he has been deceived; but, on the other hand, a certificate declaring that he has personal knowledge will not relieve him, as by it he is made a guarantor of the genuineness of the instrument in this respect.

Upon the rendition of this decision respondents filed an amended answer setting up two alleged additional new affirmative defenses which they claim were not made upon the first trial. They recite thereunder that appellant by his own acts and course of conduct had constituted Ambrose his agent to place loans for him with persons who desired to borrow money on their real estate, and to see that the loan papers and securities were properly executed. They also allege that appellant through his own negligence and that of his attorney failed to make a proper and accurate search of the title or ownership of the real estate on which the loans were made by appellant through Ambrose, and that such negligence contributed proximately to the losses sustained by him.

They here claim that under the first defense relied upon at the former trial, namely, that the notary exercised due precaution and fully complied with the statute in establishing the identity of the Pillikens and Mary French, whose acknowledgments he took, the testimony of the notary on the last trial and from which the present appeal is pending is more fully and satisfactorily developed, and that many details are gone into with reference to the intimacy of his acquaintanceship with these persons which were omitted from the first trial, and that his testimony was substantially corroborated by the testimony of new witnesses, the effect of which is to bring such acquaintanceship fairly within the decision of the supreme court in the first appeal.

Upon the second defense, involving the subject of agency, and the third, relating to negligence, it is argued that as to those defenses the evidence fully and sufficiently sustains the verdict of the jury.

It is the claim of appellant and of counsel *amici curiae* that the evidence upon this appeal is in all substantial respects identical with that contained in the record upon the former one.

[1] We are of a like opinion. The new evidence given in support of the first defense goes to the impersonators of Pillikens and French. It consists of the changing by Aronsohn of his testimony concerning the number of times he had seen and met the parties outside of his office. He also testified that the identity of the impostors was known to many other people whom he named, the majority of whom, it appears, were dead at the time of the trial.

Assuming this testimony to be true, it in no manner shows any substantial or material variation which would exonerate him for the making of the certificate in question. The same may be said with reference to the evidence introduced under the so-called new defenses. Although not specially pleaded upon the first trial, the same defenses were there interposed, and evidence received upon these questions which was fully presented before the supreme court upon the former appeal. No useful purpose would be subserved by a detailed recital of the claimed new evidence upon the subject, as it is in all material respects the same as was given upon the former trial. Upon the question of agency it may be stated, however, that evidence was introduced to the effect that Ambrose had acted as the agent of the plaintiff in making various other loans. This evidence was disputed; but assuming it to be true, these transactions were wholly unconnected with the present controversy and it was in no manner affected thereby.

At the conclusion of the taking of evidence the trial court, with the facts as related before it, failed to embody in its instructions to the jury the principles established by the supreme court upon the former appeal, and other and different instructions were given with reference to the liability of notaries. Upon the question as to whether or not Aronsohn was justified in stating in his certificate that the impostors were personally known to him the jury was instructed

as follows: "V.   You are hereby instructed that the plaintiff does not claim in the complaint that the notary Aronsohn was guilty of any fraud in executing the deeds of trust, and you cannot render a verdict against the notary and his bondsmen simply because Ambrose committed frauds upon the plaintiff.   It is simply alleged in the complaint, in two causes of action against the notary and his bondsmen, that he did not exercise the care required by law in executing the two deeds of trust, and your inquiry will be confined in this case to the question whether the plaintiff established to your satisfaction by a preponderance of evidence that the notary was not legally justified in stating in the certificates of acknowledgment that the persons who appeared before him to acknowledge the instruments in question were known to him, if he has made the proof he is entitled to recover, otherwise not.   If you find that the notary exercised the care and precaution required by the laws of this state in establishing the identity of the Pillikens who appeared before him and of Mary French who appeared before him, then it will be your duty to return a verdict in favor of the defendants."

It was also further instructed upon the subject as follows: "IX.   Section 1185 of the Civil Code of the state provides what the notary shall do in taking an acknowledgment.   It prescribes as follows: 'The acknowledgment of an instrument must not be taken unless the officer taking it knows, or has satisfactory evidence on the oath or affirmation of a credible witness, that the person making such acknowledgment is the individual who is described in and who executed the instrument.' "

These were the only instructions given relating to the subject of the personal knowledge required by a notary which would authorize him to make the certificates in question.

The former decision was chiefly based upon the legal principles controlling these questions.   [2]   It was there held that if a person who appears before a notary is not personally known to him it is the notary's duty to issue a certificate upon the oath of a credible witness instead of one upon personal knowledge, failing in which the notary takes the acknowledgment at his own risk; and further, that personal knowledge is not acquired merely through the introduction of another.

[3] Where the appellate court has in its former opinion stated a rule or principle of law necessary to a decision, that rule or principle, under the doctrine of the law of the case, must be followed and observed throughout the subsequent progress of the case both in the lower court and upon subsequent appeals (*Kahn* v. *Royal Indemnity Co.*, 63 Cal. App. 278 [218 Pac. 444]). As no new testimony upon the present trial in relation to the subject of personal knowledge was had which in any substantial manner altered or changed the situation, it was the duty of the trial court to have advised the jury that the legal requisites of personal knowledge were as defined and laid down in the former appeal. Under the instructions given the jury was left to itself to determine the question without the aid of the court.

The same may be said with reference to the question of agency. Upon this subject the jury was instructed as follows: "VIII. If you find from the evidence, either that the plaintiff, or the plaintiff through his attorney Carl W. Mueller, entrusted to Ambrose the deeds of trust and other loan papers to be properly executed, and in doing so said Ambrose committed a fraud, then I instruct you that said Ambrose was the agent of the plaintiff in seeing that the loan papers and securities were properly executed, and the loss must fall upon the plaintiff and not upon the notary and his bondsmen.''

In the former opinion the court expressly held that the entrusting of the documents to Ambrose to be executed did not constitute him the agent of the plaintiff. The instruction given upon this subject completely ignored the law of the case as established in the former decision, and it was tantamount to an instructed verdict for defendants.

We do not deem further discussion of the case necessary. The record in the instant case is in all substantial respects the same as that presented upon the former one. The trial court erred in failing to instruct the jury in conformity with the law as there laid down, and the error justifies a reversal. The judgment is accordingly reversed.

Richards, J., and St. Sure, J., concurred.