[Civ. No. 4582.   First Appellate District, Division Two.—February 1, 1924.]

## H. C. McCLENAHAN, Respondent, v. ALEXANDER D. KEYES, Executor, etc., Appellant.

[1] PHYSICIAN AND SURGEON — REQUEST FOR MEDICAL SERVICE FOR ADULT CHILD—LIABILITY OF PARENT.—One who calls upon a physician to render services to another is not liable for those services, in the absence of an express agreement to pay therefor; and though a parent requests medical service for an adult son or daughter, such request does not raise even an implied promise to pay.

[2] ID.—ABSENCE OF AGREEMENT TO PAY—STATEMENTS TO DAUGHTER IMMATERIAL.—In the absence of other evidence establishing a prior relationship of debtor and creditor between defendant and plaintiff, because of the professional services rendered by the latter as an alienist in behalf of defendant's daughter, the statements of defendant to her daughter, not in the presence or hearing of plaintiff, and at a time when the daughter was angrily "storming" over the employment of doctors and nurses, that she (defendant) would pay the doctor, or that her lawyers got the doctor, or that she had employed him herself, cannot be made of themselves to speak into existence an indebtedness which before was not.

[3] ID.—APPEAL—RETRIAL—LAW OF CASE—EVIDENCE.—On appeal from a former judgment, the supreme court having established the law of the case and determined the weight, sufficiency, and effect of the evidence given at the first trial, and reversed the judgment in favor of plaintiff, and the record on appeal from the judgment in favor of plaintiff on the retrial of the case having been in all substantial particulars the same as that at the former trial, the appeal must be controlled by the law of the case theretofore promulgated, and the second judgment in favor of plaintiff must be reversed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Reversed.

The facts are stated in the opinion of the court.

Herbert W. Erskine and Morse Erskine for Appellant.

Dozier & Dozier and Dozier, Kimball & Dozier for Respondent.

JOHNSON, J., *pro tem.*—This case is based upon a claim of $1,821 for professional services rendered by plaintiff as an alienist by reason of a serious mental disorder suffered by Miss Frances Howard, a daughter of the decedent, Anna Dwight Howard.

The claim consists in part of a charge for medical treatment and observation of Miss Howard, beginning on January 8, 1915, and in part of a charge for attendance as an expert witness in certain contested proceedings instituted with a view to having Miss Howard declared incompetent and her person and estate placed under the care of a guardian. These proceedings were dismissed without prejudice in October, 1915. In the following January, however, a new proceeding was instituted, which was uncontested, and which, without testimony from plaintiff, resulted in the appointment of a guardian.

Thereafter plaintiff brought suit against Miss Howard to recover for the same services for which claim is made here. In that action plaintiff recovered judgment for only $45, and on his appeal the judgment was affirmed on the ground that, with the exception of attendance when Miss Howard was unconscious and in need of medical aid, the services of plaintiff could not be held to have been rendered at her request or for her benefit. (*McClenahan* v. *Howard,* 50 Cal. App. 309 [195 Pac. 68].)

Thus failing to recover compensation in full from Miss Howard, plaintiff, in July, 1918, presented a claim, and in due time instituted the present action, against the estate of Miss Howard's mother, Anna Dwight Howard, who had meanwhile died. And by his complaint in this action plaintiff asserts that the services were rendered at the mother's special instance and request. The case has been tried twice. In the first trial judgment was rendered in plaintiff's favor for $1,798.50. An appeal from the judgment was taken by the defendant and the judgment was reversed,

primarily on the ground that no employment by the mother had been proved. (*McClenahan* v. *Keyes*, 188 Cal. 574 [206 Pac. 454].)

Since that decision the case has been retried, with a judgment resulting in favor of the plaintiff for $1,821 and interest, and the case now comes here on appeal by the defendant, who contends that the same vice which impaired the former, infects the present, judgment.

In the former appeal the supreme court established the law of the case and determined the weight, sufficiency, and effect of the evidence given at the first trial. (*Goldner* v. *Spencer*, 31 Cal. App. 13, 15 [159 Pac. 462]; *Burr* v. *United R. R.*, 173 Cal. 211, 212 [159 Pac. 584]; *Anderson* v. *Aronsohn*, 63 Cal. App. 737 [219 Pac. 1017].)

Consequently, the question on this appeal is merely whether or not the case now wears a different aspect because of any new evidence given at the second trial.

The facts being given in detail in the opinion of the supreme court, a brief statement will suffice here. Miss Howard was a young woman of about thirty-three years of age and possessed of property worth over one hundred thousand dollars. On January 7, 1915, her mental condition was such as to alarm her relatives, and she was placed in a sanitarium conducted by Dr. Bering, who on the following day, while Miss Howard was unconscious, summoned Dr. McClenahan to her aid. This was the beginning of a service which continued for a considerable period. At the time when plaintiff was first called, Miss Howard's mother was in the east, and on being informed of the daughter's condition, Mrs. Howard hastened to San Francisco in company with her son-in-law, Mr. Whitwell. When Mrs. Howard arrived she and Dr. McClenahan had a conference, as to which the testimony, embodied in the doctor's deposition, was precisely the same at both trials; and the supreme court has held that nothing occurring at that conference constituted an employment of the doctor by Mrs. Howard.

Prior to Mrs. Howard's arrival Dr. McClenahan had had a meeting with Miss Howard's attorney, Halsey Rixford, and on that occasion Mr. Rixford showed the doctor a telegram which had come to Mr. Rixford from the east. The authorship of this telegram was left in doubt at the first trial, the evidence being that the message was sent either

by Mrs. Howard or her son-in-law, Mr. Whitwell. At the second trial Mr. Rixford's recollection was that he received two telegrams, one before Mrs. Howard left Boston, which was either from her or Whitwell, the other while Mrs. Howard was on the way, which, as Mr. Rixford recalls, was signed by her and "expressed a maternal solicitude for her daughter's welfare," and stated the date of the mother's probable arrival in San Francisco. This latter telegram, however, was not, according to Rixford's recollection, shown to the doctor. The telegram which the doctor saw must then have been the first telegram received; and its authorship is left in the same doubt at the second trial as at the first. Accordingly, under the ruling of the supreme court, that telegram must be deemed immaterial. Even if the later telegram had been shown to the doctor, it contained nothing authorizing his employment; hence neither telegram serves to strengthen the plaintiff's case. Were it to be assumed, however, that Mr. Rixford did have express authority from Mrs. Howard to employ a physician, the testimony shows without conflict that no employment in her behalf was in fact attempted. Mr. Rixford testified positively that he did not undertake to employ Dr. McClenahan for anyone, but gave the doctor to understand that if Miss Howard should be declared incompetent or insane, compensation for his services would be payable out of her estate. And the testimony of Dr. McClenahan himself in the guardianship proceedings, found also in the record here, shows that he made no arrangements for compensation, but that he expected Miss Howard, or someone in charge of her affairs, to compensate him adequately for his time and services. There is nothing, therefore, in the new testimony of Mr. Rixford that lends support to the plaintiff's case.

In an effort at the last trial to establish an employment by Mrs. Howard, the plaintiff called as a witness Mrs. Vandever, who did not appear at the previous trial.

Mrs. Vandever was Miss Howard's nurse, and was present at several meetings, described as stormy, between Miss Howard and her mother, at which mention was made of the doctors. The first of these conversations was at the Adler Sanitarium in February, 1915, and the witness testified as follows: "Every time the question came up, the daughter would say to the mother, 'How long am I to have these

nurses? How long am I to have these doctors? I don't want them. There is nothing the matter with me.' That is what the daughter said always to the mother, and she would say, 'Frances, this will soon be settled, and then you will be all right.' She said, 'I don't want Dr. McClenahan, and I am not going to pay him.' That is the statement the daughter would make every time. The mother would say, 'Well, now, Frances, you are not to worry about paying. That is my business. I am going to pay Dr. McClenahan. It was me that got him in the first place, through my attorney.' She said, 'It was through the lawyer that I got Dr. McClenahan.'"

Speaking again of a conversation in April, the same witness said: "The mother came to have lunch in San Mateo with the daughter and me, and after lunch, in the living room, Miss Frances Howard started the same question, and again the mother told her that 'It is going to be settled in court, and you will probably go with me east, and I will take care of your affairs, and you don't have to pay. I am going to pay. I have employed Dr. McClenahan myself.' She made the statement that she was glad to have him."

Proceeding further the witness gave also the following testimony:

"I was with the daughter four times that I can remember at the Adler, and when the daughter did first ask the mother how she got the doctor, and I do not recall that she said exactly by telegraph, but I know she said, 'My lawyers got Doctor McClenahan. I want Dr. McClenahan, and I continued with him.' And at the San Mateo home and at the Peninsular Hotel the matter would come up at luncheon, during the time I was with Miss Howard.

"Q. You said at the Peninsular Hotel, did you not?
"A. Yes.

"Q. In San Mateo? A. Yes, in San Mateo. And there was no time that the daughter would not bring the same conversation up of how long she was going to have a doctor and how long she was going to have a nurse, and the same question, 'I am not going to pay them.' And the mother each time would try to make her quit talking money, and each time would say, 'I will take care of that for you. I will pay the doctor.' That statement was made every time to the daughter by the mother in my presence.

"Q. You are not able to state just exactly the date of each of the conversations, are you? A. No.

"Q. The one at the Sanitarium, the one at the home in San Mateo, and the one at the Peninsular Hotel? A. No, she would generally be storming—the daughter would storm with the mother.

"Q. Storm? A. Yes. Be angry, you know, with the mother.

"Q. You mean, find fault with her? A. She was very noisy and very loud at times."

Such being the supplemental testimony, we are to determine whether with its aid the evidence as a whole can now be said to support a finding of an employment of Dr. Mc-Clenahan by Mrs. Howard.

[1] In deciding the former appeal the supreme court declared the general rule of law to be that one who calls upon a physician to render services to another is not liable for those services, in the absence of an express agreement to pay therefor. And though a parent requests medical service for an adult son or daughter, such request does not raise even an implied promise to pay.

The court further determined that nothing in the dealings had by Dr. McClenahan either with Mrs. Howard herself or any of the attorneys showed an employment of the doctor by Mrs. Howard, or a promise binding her either expressly or impliedly to pay his charges. That being the case, surely there is nothing in Mrs. Vandever's testimony which supplies proof ever so slight of an express promise on the part of Mrs. Howard to Dr. McClenahan.

In order to create a contract there must be a meeting of minds between parties treating either directly or through some agency. [2] And without a shadow of proof of any previous transaction establishing the relation of debtor and creditor between Mrs. Howard and Dr. McClenahan, Mrs. Howard's statements to her angrily "storming" daughter that she herself would pay the doctor, or that her lawyers got the doctor, or that she had employed him herself cannot give body to that which is bodiless or infuse the breath of life into the stuff of dreams. If there were any evidence of an actual contract, Mrs. Vandever's testimony would then be corroborative. But neither Mrs. Howard herself nor any attorney made to the doctor any promise to pay;

and without evidence of some authentic contract previously made, there is no art in the law whereby such declarations can be made of themselves to speak into existence an indebtedness which before was not. (See *Bennett* v. *Potter,* 180 Cal. 736, 745, 746 [183 Pac. 156] ; *Stimson Mill Co.* v. *Hughes Mfg. Co.,* 8 Cal. App. 559, 561, 562 [97 Pac. 322].)

To fashion a contract out of Mrs. Vandever's testimony it would be necessary to reject arbitrarily and unreasonably all the other evidence, including the actions and testimony of Dr. McClenahan himself, despite the fact that such other evidence affords clear, direct, and positive proof that Mrs. Howard never did obligate herself to pay the fees. The record does not justify opposing conclusions, and under such circumstances it must be said that Mrs. Vandever's testimony does not, in legal intendment, conflict with the other testimony in the case. (*Seeley* v. *Osborne,* 220 N. Y. 416, 422 [116 N. E. 97].)

It is unfortunate and seemingly inequitable that Dr. McClenahan has had to go unpaid. He gave undoubtedly important and valuable aid much desired by Miss Howard's relatives. And the situation in which he is left is apparently due to the fact that, unmindful of his private interest, he trusted to be paid instead of exacting an express agreement from someone competent to act.

In different trials the doctor has voiced different inferences or opinons as to who was his real debtor; but now, as on the former occasions, liability must be made to depend on the facts in evidence, uninfluenced by personal opinions. (*Burns* v. *Jackson,* 59 Cal. App. 662, 666 [211 Pac. 821].)

[3] There has, however, at no time been variance in the testimony as to the governing facts; and since the record here presented is in all substantial particulars the same as that at the former trial, it follows that this appeal must be controlled by the law of the case heretofore promulgated. Inasmuch as the evidence, weighed by that standard, fails to support findings in favor of plaintiff, the judgment must be reversed. It is so ordered.

Nourse, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 27, 1924, and a

petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 31, 1924.

All the Justices concurred.