[No. 12700. In Bank. — December 8, 1888.]

## ISAAC S. SMITH, RESPONDENT, v. J. R. MILLARD, APPELLANT.

INCOMING PARTNER — LIABILITY FOR DEBTS OF THE OLD FIRM. — An incoming partner is not liable for the debts of the old firm, unless he agrees to become so. Instance of construction of agreements in this regard.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion.

*C. M. Stephens*, and *Shaw & Damron*, for Appellant.

There is no presumption that a new partner or a new firm assumes a personal liability for debts of the firm existing previous to the transaction by which the new partner came in or the new firm was constituted. On the contrary, the presumption is, that such new firm is not liable for such debts. (*Kountz* v. *Holthouse*, 85 Pa. St. 236; 1 Lindley on Partnership, 390; *Fuller* v. *Rowe*, 59 Barb. 344, 352; 57 N. Y. 23; *Adkins* v. *Arthur*, 33 Tex. 431; *Atwood* v. *Lockhart*, 4 McLean, 350.) The rule is, that the incoming partner does not become liable for the antecedent debts of the firm without an express agreement upon a sufficient consideration. There is no

such agreement here.    (*Meador* v. *Hughes*, 14 Bush, 652; *Wright* v. *Brosseau*, 73 Ill. 381; *Parmelee* v. *Wiggenhorn*, 6 Neb. 322; *Sternburg* v. *Callanan*, 14 Iowa, 251.)

*Charles L. Batcheller*, for Respondent.

HAYNE, C.—The material issue in this case was whether the defendant Millard, who was an incoming partner, assumed certain obligations of the old firm. The court below found that he did.    But we think that this finding is not sustained by the evidence.

The plaintiff Smith, who was a member of a partnership known as the Express Printing Company, sold out his interest to Bynon and Morrill, who continued the business for a short time under the old name.    Part of the consideration for this sale was a contract by Bynon and Morrill to do five hundred dollars' worth of printing for Smith.    This contract is one of the obligations which it is claimed was assumed by the defendant Millard, the other being a note of Bynon and Morrill to a Los Angeles bank.    Millard had nothing to do with this transaction. There is some testimony by the plaintiff indicating that he thought that defendant's knowledge of the conditions of the transfer and his subsequent connection with the firm rendered him liable.    But it is clear that this transaction was between the plaintiff on the one part and Bynon and Morrill on the other, and that the defendant had nothing to do with it.    A short time after Smith's transfer of interest, a new firm was formed, under the name of the Pacific Publishing Company, consisting of Bynon and Morrill and the defendant Millard.    The agreement by which this copartnership was formed was in writing.    It contains nothing whatever to indicate that Millard assumed the obligations of the old firm. Some of the partners were evidently under the impression that this contract made the new firm liable for the old debts.    Thus Bynon says: "The contract of copart-

nership by the new firm of Millard, Morrill, and myself
contained a paragraph in regard to the payment of these
obligations.   The intention, so far as I was concerned,
was, that we jointly assumed all the liabilities." And
this idea explains some general statements of this and
other witnesses for the plaintiff, to the effect that Mil-
lard "assumed the payment" of the old debts.   They
were simply mistaken as to the legal effect of the agree-
ment.   There are no facts supporting such an idea.   On
the contrary, according to Morrill's own testimony, it was
expressly agreed that he himself, and not the new firm,
should become responsible for the performance of the
printing contract.   The following is his account of what
occurred when the plaintiff came to the office to get the
new firm to assume the obligation in question: "Mr. Mil-
lard said he was not ready to sign an agreement to do
that printing by our office, for the reason that he did
not understand how our office was to receive any re-
muneration for it,—any pay. . . . . Mr. Bynon and I
explained to him that *I was to pay* the Pacific Publish-
ish Company for doing that printing.   It was to be paid
*out of money which I was to receive* out of the directory
and pamphlets which were then being printed, both for
San Bernardino city and county.   Mr. Millard said that
was all right, but he wanted something to show for it.
It was considerable work,—five hundred dollars' worth;
he thought that it ought to be secured in some way.
We made the arrangement there that I should secure
the Pacific Publishing Company for the payment of
that work, five hundred dollars, and *upon my making
that agreement* they agreed to sign the paper." But it
seems that the plaintiff repudiated this proposed ar-
rangement, for Morrill goes on to say: "But Mr. Smith
said *he had nothing to do with the Pacific Publishing Com-
pany.*   The agreement was by Bynon and I to have that
printing done for him, and *he wanted us to execute the
agreement as the Express Printing Company.*   We did so."

So far, therefore, there is nothing to show any assumption by Millard of the debts of the Express Printing Company.

About a month after the formation of the Pacific Publishing Company, Morrill transferred his interest in it to Bynon and Millard. On this occasion it appears that Bynon and Millard assumed the obligations of the Pacific Publishing Company. For Morrill says: "The substance of the conversation was, . . . . that I should step out and be released and relieved from all obligations and contracts." This must be taken to mean that he was to be released from the obligations and contracts of the firm from which he was retiring, viz., the Pacific Publishing Company. And as we have shown, the obligations sued on were not of this company, but of the Express Printing Company. But the idea that the Pacific Publishing Company had in some way or other become liable for the old debts seems to have taken hold of the minds of some of these parties, and they state their conclusions as to it in several places. As above shown, however, this idea was a mistaken one. There were no facts to support it on the former occasion, and there are none on this. Morrill himself says: "At that time *there was nothing said*, that I know of, about Bynon and Millard doing the five hundred dollars' worth of printing."

There was nothing, therefore, upon this occasion which showed an assumption by Millard of the old debts.

Some time after this, Bynon sold out to Millard, who thus became the only one remaining in the business. There was no testimony which tended to show an assumption by Millard of the debts in question at the time of this transfer. The written agreement of dissolution provides that "all the obligations *of the firm*, except those specified above, *contracted by said Millard and Bynon since they became partners*, are assumed by said Millard, including a five-hundred-dollar note by the firm

to himself." But, as we have shown, the obligations in question were of the Express Printing Company, and not "of the firm," referred to in this agreement, which was the Pacific Publishing Company. Moreover, they were not "contracted by said Millard and Bynon since they became partners."

There was therefore nothing in the evidence which showed an assumption by Millard of the debts in question. The fact that he went to the bank and offered to have the Pacific Publishing Company assume the note held by the bank certainly gives color to the theory of the plaintiff. But the proposition was rejected by the bank, which wanted his individual signature, which he declined to give. And his going at all is, we think, satisfactorily explained by him in his testimony, to the effect that he then supposed his partners to be solvent, and that he was willing to have the new firm sign as security for them, but that when he found they were not solvent, he declined to do anything.

The specifications in the statement are sufficient to raise the question.

We therefore advise that the judgment and order appealed from be reversed, and the cause remanded for a new trial.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and the cause remanded for a new trial.