## PAINTER'S EXECUTORS v. PAINTER et al.

### S. F. No. 1971; May 25, 1901.

#### 65 Pac. 135.

Partnership—Accounting.—Where a Surviving Partner Carried on the firm business with the firm assets until it was terminated by the appointment of a receiver, an accounting should be as of the date of the appointment of the receiver, and a personal judgment against the surviving partner, which merely fixed his liabilities as of the date of the deceased partner's death, was erroneous.

Partnership—Death of Partner.—Where the Assets of a Partnership Dissolved by the death of one of its members were used by a new firm formed by the surviving partner, the old partnership was entitled to a share in the profits of the new firm proportionate to the value of the assets of the old firm used, as compared with the value of the property or services contributed by the new firm; but all the property of the new firm should not be regarded as assets of the old.

APPEAL from Superior Court, City and County of San Francisco; James M. Troutt, Judge.

Action by Jerome B. Painter's executors against Theodore P. Painter and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Pringle & Pringle for appellants; M. B. Kellogg. for respondents.

PER CURIAM.—Appeal from a judgment for plaintiffs and from an order denying the defendants a new trial. The case was before this court on appeal from a former judgment and similar order in favor of plaintiffs, and reversed, reported in 4 Cal. Unrep. 636, 36 Pac. 865. The case, stated generally, and so far as identical on the two appeals, or noting divergences, is as follows: The defendants and the plaintiffs' testator, Jerome Painter, were brothers, and at the time of the death of the latter he and Theodore were partners, under the firm name of Painter & Co., in the business of printing and of manufacturing type in the city of San Francisco. Jerome died February 6, 1883, and by his will the plaintiffs and the defendant Theodore were named as executors, and qualified as such; but the latter resigned May 3, 1888. On the death of Jerome the business and assets of the firm came to the hands of Theodore as surviving partner. But shortly afterward he formed a partnership with the defendant Milton under the firm name of Painter & Co., and thereafter the business of the old firm and that of the new was carried on under the same management, under the name of Painter & Co., up to May 17, 1889, when a receiver was appointed, who took possession of all the properties in the possession of the defendants as partners, whether of the old or of the new firm. Thus far the facts are undisputed. But it was found on both trials that after the defendants took possession the business was managed by them as if it were their own, and under claim to that effect; and in the findings on the last trial, now under review, it is found that this claim of defendants was based on a bequest in the will of Jerome (being the bequest referred to in Painter v. Painter, 113 Cal. 371, 45 Pac. 689); and that, under this claim, they continued, to the commencement of the suit, to hold the assets of the old firm, and to use them for their own benefit, or, more specifically, in "the conduct of the business of the old firm of Painter & Co., claimed by them as aforesaid"; and also that the defendant Theodore failed to keep the books of the concern correctly, or to keep a just or true account of its business, for the reason that the books have been kept by the new firm as accounts of their own; and that "such omission and neglect was not with fraudulent

intent, but was willfully and wrongfully careless and negligent.'' It was further found on the last trial—and, in effect, on the former—that the business continued to be the business of the old firm, and that all the properties in the hands of the defendants when taken from them by the receiver were the properties of the old firm. On the former trial it was found that the irregularities in the books were the result of fraudulent design of the defendants to cheat and defraud the estate; on the latter the findings negative the existence of fraud on the part of defendants. Otherwise, with regard to the facts found, the general case presented on the two appeals is substantially the same. But, with regard to the effect to be given to the facts, the conclusions reached by the court, and the judgments rendered in accordance therewith, are widely divergent; and, as one of the questions to be now determined is as to the effect of the former decision as the law of the case, a brief statement of the effect of the findings and judgments on the former trial will be necessary. On that trial the settlement of the accounts of the partnership was carried up to the date of the commencement of the suit, at which time the business of the old firm, as also that of the new, was terminated by the receiver taking possession of the assets of both; and in the findings there is contained a statement of the account of Theodore as of that date. This is based on a statement of the ''resources and liabilities'' made out by the plaintiffs' expert, and put in evidence by them, which may, therefore, be regarded as part of the finding. From this it appears that the net capital of the firm (the old and new firm being regarded as one) at the date of accounting (''assuming all resources as collectible,'' etc.) was the sum of $113,142.31, and the share of each $56,571.15; but that Theodore was to be charged with various amounts, to be deducted from his share, aggregating $67,246.19. These items (with the exception of two, amounting to $15,208.86) were charges against Theodore to correct credits in his favor on the books, found by the court to be unauthorized; and with reference to all of them this court on appeal held the findings not to be justified by the evidence. This (with the exception of the items specified) leaves the account as shown by the books. Another correction is, however, required with reference to a charge of $21,201.50, or more, credited on the books to Jerome as the purchase money of certain school lands,

which this court on the former appeal held to have been a private transaction of Jerome's, and therefore to be transferred to his personal account. With these corrections, as the result of the last trial and decision on appeal, we may assume the account thus corrected to be a correct, though not complete, exhibit of the state of the account between the partners.

The judgment entered by the court on the above data is, of course, on the present appeal immaterial. But it may be briefly alluded to as part of the history of the case, and as serving to illustrate the character of the judgment now before us on appeal. The result of the court's calculations on the former trial was to bring Theodore in debt to the firm, after deducting credits on the books, in the sum of $28,675.64. Judgment was accordingly rendered against him personally, and in favor of the plaintiffs, for one-half this amount, $14,337.82; and it was further adjudged that the balance of the net capital, $113,142.31, after deducting the amount of $28,675.64, in which Theodore was found to be indebted to the firm—being $84,466.37—should be divided equally between the parties. But among the resources of the firm going to make up the amount thus to be divided between Theodore and the plaintiffs it appears from the statement of resources and liabilities that there was an indebtedness of Jerome to the firm of $32,532.14, of which one-half would, under the judgment, belong to Theodore. The judgment for the division of the net capital was, therefore, in effect, a judgment that Jerome, or, rather, his executors, was indebted to Theodore in the sum of $16,276.57—an amount exceeding the amount of the judgment against the latter by $1,938.75. On the last trial, now under review, a different mode of settlement was adopted. No account was taken of transactions subsequent to the death of Jerome, nor was there any attempt to settle the accounts of the partners. All that is found is that at the date of the death of Jerome he was not indebted to the firm, and the net value of the firm's 'assets, over liabilities and exclusive of real estate, was $62,708.50, to which is added the sum of $2,740, in which Theodore is found to be indebted to the firm, thus making "the total net market value of the assets" $66,448.88; and for one-half of this—$33,224.44—judgment is rendered against Theodore personally and as surviving partner, to be satisfied by sale of his share of the assets, real and personal, and, if these be insufficient, a deficiency

judgment to be docketed against him.  This was obviously erroneous.  It is expressly found by the court that the business carried on after Jerome's death, with all its original assets and accessions and profits, was the business of the old firm; and Theodore was, therefore, entitled to an accounting up to the date of its termination by the appointment of the receiver.  Until final settlement of the accounts, a personal judgment against a partner or surviving partner is erroneous: 2 Bates, Partn., secs. 919, 971, 974.  Argument on this point is unnecessary; but the result of the mode of settlement adopted by the court may be illustrated by comparing it with the settlement made at the former trial.  There, though Theodore was improperly charged with items amounting to $52,037.30, yet the result was a judgment against him of $14,-337.82 only, less than one-half of the judgment rendered at the last trial on data precisely the same, except that the charges disapproved by this court on the former appeal were presumably omitted.  For the reason given, the judgment must be reversed, and the cause remanded for new trial.  There are however, other errors, which, with a view to the future proceedings in the case, must be adverted to.

1. In arriving at the conclusion that the value of the assets of the firm at the date of the death of Jerome was $66,448.88, and that his executors were entitled to one-half thereof, it was necessary for the court to assume that Jerome was not indebted to the firm in any amount when he died; and accordingly it is so found.  But this finding is clearly in conflict with the statement of resources and liabilities made by the plaintiff's own experts, put in evidence by them, and accepted by the court on the former trial, wherein, among the resources of the firm, is a debit to Jerome's account of $32,532.14; and, in addition, it was held by this court on the former appeal that he had been improperly credited with large amounts for purchase money of school lands (amounting, according to the testimony of Folger, plaintiff's expert, to the sum of $21,-201.50), which should have been charged to his personal account.  Assuming these amounts to be correct, the indebtedness of Jerome to the firm at the time of his death was largely in excess of Theodore's, and the interest of the latter in the assets of the firm correspondingly greater than that of the former.  What was the precise interest of Jerome in the assets of the firm at the time of his death is to be determined by the

lower court; but on the new trial the attention of the court should be directed to the claim of appellants that it in fact amounted to nothing, and to what is said by this court on the former appeal with reference to this claim, and as to the law applicable to the case if the claim should be found to be just. With regard to the judgment in the case of Painter v. Painter, 113 Cal. 371, 45 Pac. 689—which the court held to estop the defendants to claim that Jerome was in fact indebted to the firm at the time of his death—it is obvious that the finding cannot be sustained. Leaving out of view the objection that Theodore suffered default, and that there was no judgment against him, and consequently no estoppel, it is otherwise clear that neither he nor Milton was estopped. The indebtedness referred to in that suit was an alleged personal debt of Jerome to the firm, as distinguished from an indebtedness for money withdrawn from the firm, which could be determined only upon a final settlement of the partnership concerns. The findings of the court were carefully confined to indebtedness of the kind alleged. The settlement of the partnership accounts was involved only as incidentally necessary to the relief sought, which was a sale of lands. The court refused to entertain jurisdiction of, or to hear evidence on, that subject; and it was in fact formally admitted by the defendant's attorney that Jerome had withdrawn from the firm more than Theodore, or, in other words, was indebted on that account.

2. On the former trial the court found, in effect, that the appointment of a receiver was necessary to preserve the property, etc., and this court held on appeal that the finding was not supported by the evidence; yet on the present appeal we have the same finding. As the case is reversed on other grounds, we have not thought it necessary to examine the record critically, with a view of determining whether there is new evidence on this point materially affecting the case, though on such examination as we have made we have not been able to discover any. But the court on the former appeal also held that "the receiver should have been discharged," and this injunction has been disregarded by the lower court. On another appeal, a continuance of the receivership, unless the case be materially varied from what it was on the former appeal, may be a ground for reversal.

3. The court finds that all the property held by Painter & Co. (the new firm), including the Directory, belongs to the old firm. This finding, we think, is not sustained by the evidence. The firm of the defendants and the dissolved firm, though having the same name, are entirely distinct entities. The use of the assets of the old firm in the new business entitled it to a share in the profits, but not necessarily to an ownership of the assets acquired by the new firm; nor could it give it more than a part ownership of such assets, proportionate to the value of the assets of the old firm used, as compared with the value of the money or services contributed by the new firm. On this point, also, attention should be directed to what was said by this court on the former appeal.

4. There are other imperfections in the findings that may be briefly adverted to. The finding that the assets of the old firm were "appropriated by the defendants to their own use" is inconsistent with the finding of the court that their claim was based on the bequest in Jerome's will, and with the facts also found that an inventory and account were filed in the matter of his estate. Their claim was evidently in subordination to the title of Jerome's executors. The finding that the amounts collected by Theodore from old accounts and sales of stock of the old firm were expended by the defendants in the attempt to continue the business seems also to be in conflict with the evidence. A part of it—$10,000, and presumably more—seems to have been paid on the debts of the old firm. The judgment and order appealed from are reversed and the cause remanded for new trial, to be conducted in accordance with the principles stated in this and in the former decision of this court.