[Civ. No. 30. Fourth Appellate District.—December 11, 1929.]

CARRIE D. WOOD, Appellant, v. G. A. WATERMAN et al., Respondents.

C. Ibeson Sweet for Appellant.

Chambers & Lyman for Respondents.

SLOANE, P. J.—This appeal was originally taken to the Supreme Court of the State of California from a judgment of nonsuit against plaintiff in an action brought by plaintiff to recover damages in the amount of the partial payments made by plaintiff and her assignors on several contracts for the purchase of real estate.

Each and all of these contracts were entered into in the early part of 1923, and were the individual contracts of the plaintiff and her assignors, with and subscribed by "California Fruit Land Association, by John H. Wood, President, G. A. Waterman, Secretary." Each of the contracts is substantially the same as to its terms and conditions, in which the seller agrees to sell and convey certain specific tracts of land in the county of Riverside, and the vendee agrees to purchase the same at a stipulated price, payable in installments. Time is made of the essence of the contract, and the seller agrees to plant, at proper or customary planting season next following the execution of the agreement, 480 grape-vines, interset with 28 fig trees, to each acre; to cultivate and care for the same for three years, and replant dead vines or trees, and to furnish water for domestic and irrigation purposes.

It is not claimed or contended that the defendant Charles F. Hill was, at the time of the execution of these contracts, a party thereto, or in any way connected or associated with the copartnership known as California Fruit Land Association.

It is alleged in the complaint, however, and the testimony in the record tends to substantiate such allegation, that on or about June 12, 1923, the defendant John H. Wood abandoned and withdrew from said copartnership, and transferred his interest therein to the defendant G. A. Waterman, and that on or about the same date the defendant Charles F. Hill and G. A. Waterman entered into some sort of a contract of copartnership, the terms of which are not in writing, and do not definitely appear, whereby they were to assume and carry out the contracts of the vendors sued on in this action. Mr. Waterman, on the trial, testified substantially as follows:

"Mr. Wood left and abandoned the business, I think, on the 11th of June, 1923, and I took over his share. At that time when Mr. Wood went out, I made an oral agreement with Mr. Hill in regard to this business and as to these contracts. This was approximately the middle of June, 1923. I told him for a certain stipulated amount—I don't remember the exact amount—which would cover Mr. Wood's side of it, I would give him a half interest in the business on just the same basis as Wood and I had been working

on previously. I told him I would like to have him take Mr. Wood's place by paying in a certain amount and becoming a half interest partner with me. I don't know just what Mr. Hill did say in reply, except that he agreed to come in with me, and went with me to see all these purchasers and talked matters over and found out just what the status of the business was, and expressed himself to the purchasers that he was in with me as a partner on this project. He told them that he was my partner. Mr. Hill told Miss Wood (the plaintiff here), that we were going to take care of that situation, and told about his experience on work of this kind, and assured her that everything would be all right. I mean in regard to these contracts. I think we had the contracts with us. I can't say they were produced at the time; as I stated, Mr. Hill told Miss Wood that he had come into partnership with me, and that together we would carry out the contract and the plans for the work. With regard to carrying out these contracts, Mr. Hill went with me a great many times to Arlington, paid for wire and expenses and different things, and furnished the money, and we went on and also collected up—these were on a monthly payment basis—and the contract holders paid regularly, and we carried on until—it was a very unfavorable season—until conditions got so that without irrigation we saw there was no use going on and spending the money, and we finally had to give up the work, and in the meantime Mr. Hill was going back and forth with me and advancing money for the project. We gave up that work about the first of September, 1923. The payments under the contract were made to me. Mr. Hill did not receive any of the money." (Tr., fols. 210–240.)

The witness Waterman also testified that about the first part of 1924, the contract holders were notified that this sale of these particular pieces of land described in the various contracts could not be carried out by the sellers, "and that the conditions could not be met with that were incorporated in those contracts," and that he gave the contract holders a little agreement to the effect that the nonpayment of their installments would not jeopardize any interest they had there, and that since 1923 the sellers had done nothing to fulfill the contracts in regard to the cultivation of these lands, and the planting and keeping up of the same,

and it appears that by reason of lack of irrigation and cultivation all improvements on the land were abandoned, and that the lands in question reverted to their barren and uncultivated state, and have ever since so remained. The facts as set out in the foregoing synopsis of Mr. Waterman's testimony, afford the only evidence of any obligation on the part of Hill to carry out the terms of the written contracts or to respond to plaintiff or the other contracting parties in damages.

The total amount paid in by plaintiff and her assignors under these contracts toward the agreed purchase price is the sum of $6,937.70. The amount of the unpaid install-. ments under the contracts in question is not set forth, but it is conceded that no payments thereon were made after January, 1924, and that no tender or offer to pay thereon was made thereafter and before the commencement of this action. The vendees continued installment payments after Hill came into the business, but in what amounts does not appear.

At the close of plaintiff's case a motion for nonsuit was made in behalf of defendant Hill on the grounds (1) that the complaint does not state a cause of action against Hill; (2) that the evidence is insufficient to show liability of defendant Hill on the contracts for purchase and sale, and that no agreement in writing assuming such liability, is alleged or shown in the evidence. The motion for nonsuit was granted, and the court made its judgment that said action "be and is hereby dismissed with prejudice as to the defendant Hill."

It is undisputed that Hill was not a party to the execution of the contracts in question, and that if he can be held for any liability for the subsequent failure of performance on the part of the vendors, such liability must arise upon an enforceable assumption of such liability in the subsequent partnership arrangement with defendant Waterman.

▪ The original partnership doing business as the California Fruit Land Association consisted of J. A. Waterman and John H. Wood. When Wood withdrew and transferred his interest to Waterman in January, 1923, this partnership was dissolved. (20 Cal. Jur. 794; *Shuken* v. *Cohen*, 179 Cal. 279 [276 Pac. 447] ; Civ. Code, sec. 2450.)

■ If Waterman and the defendant Hill entered into an agreement to associate themselves together to continue the business under the same name, it nevertheless created a new legal entity. (*Painter's Exrs.* v. *Painter,* 6 Cal. Unrep. 677 [65 Pac. 135], in which the incoming partner would not be liable for the obligations of the old partnership, unless he definitely assumed such obligations in a way to create a legal liability. ■ The fact that he may have held himself out as a partner with Waterman for carrying on this contractual business, and even orally assured the vendees that it was the intention of the new concern to carry out the terms of the agreements, or that he actually contributed of his time and means to that end, will not bind him in the absence of a new consideration, or some prejudice suffered by the contract holders induced by his representations.

In the suit of *First Nat. Bank* v. *Simmons,* 98 Cal. 287 [33 Pac. 197], an action on a promissory note executed by the copartnership, where it was attempted to hold a third party, who had subsequently come into the partnership, for liability on a note, the court says: "Assuming for the purpose of this appeal, that the evidence tends to prove a transfer of the interest of Charles F. to E. M. Hall between August 1st and October 1st, 1890, and also that Simmons accepted E. M. Hall as a partner at the time of the transfer, yet these facts alone did not make E. M. Hall responsible on the note on which this action is brought, which had been made by the firm composed of Simmons and Charles F. Hall, a year before E. M. Hall came into the firm. In order to make E. M. Hall liable on that note, it must have been proved that in some way he assumed the obligation created by it. (*Smith* v. *Millard,* 77 Cal. 440 [19 Pac. 824] ; Lindley on Partnership, 2d ed., 205 et seq.) Of this, however, there is no evidence whatever."

■ It is the recognized rule that where an obligation of an incoming partner to be responsible for the debts of the old partnership is alleged, such obligation must be evidenced in writing under the statute of frauds, unless the assumption of liability grows out of and is part of the consideration of the new partnership agreement.

Exceptions to this rule that a promise to answer for an obligation of another must be in writing is contained in

section 2794 of the Civil Code. Subdivision 3 of this section provides, among other exceptions, that such promise need not be in writing when it is made "upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person."

In the instant case the evidence introduced on the trial tends to show that a partnership agreement was entered into between Waterman and Hill whereby, as part of the consideration, the new partnership was to take over and carry out the terms of these sales contracts.

The case of *Stover* v. *Stevens,* 21 Cal. App. 261 [131 Pac. 332, 333], presents a somewhat similar state of facts to that involved in this appeal. The plaintiff brought his action to recover for merchandise sold and delivered, and work and labor performed, against L. C. Stevens and S. F. Brown, copartners as Stevens & Brown, and on assigned contracts and liabilities of Stevens. The indebtedness was originally created as an obligation of Stevens, who had been carrying on the business prior to the alleged copartnership with Brown. The action was sought to be maintained against Brown on the ground that the new copartnership had assumed the Stevens indebtedness.

The court in the opinion says:

"Appellant addresses himself first to the personal claim of plaintiff, claiming that there is no evidence of any indebtedness of the firm of Stevens & Brown to plaintiff, and that the finding can only be sustained on the theory that Brown assumed the personal indebtedness of Stevens; that there is neither pleading, evidence, nor finding that defendant Brown agreed to pay or assumed the indebtedness of Stevens existing prior to the partnership. Cases are cited as holding that an incoming partner is not liable for the debts of the old firm, unless he agrees to become so. It is also contended 'that in order to recover the debts of the old firm from an incoming partner, there must be some allegation in the complaint connecting him with the liability.' And that the court erred in overruling defendant's objection to evidence tending to prove an indebtedness existing prior to the formation of the partnership. In nearly all the claims the evidence related to the prior indebtedness to Stevens, as well as to the firm indebtedness. . . .

"The point raised as to the statute of frauds, must be decided in view of the circumstances attending the transaction or formation of the partnership. There was evidence that some time prior to the formation of the partnership Stevens had been carrying on the butcher business, selling meats and some other articles, at the town of Prattville and Greenville. A few days prior to June 27, 1910, he took defendant Brown over his delivery route and explained the business to him. He explained in a general way how the business stood, what his liabilities were, and what the book-accounts receivable and other assets amounted to. Upon this showing, Brown agreed to enter into partnership, which began June 27, 1910. Upon the terms of the agreement there is some conflict between the testimony of Stevens and Brown. Stevens testified:

" 'Q. What, if any, understanding was had between you and the defendant Brown as to the assumption by you and the defendant Brown or the partnership, of the indebtedness existing at that time? A. Well, the only thing that was said about that, I figured up my indebtedness and my resources, and Mr. Brown agreed to put up as much money in the business as I had invested, over and above my liabilities, assuming a portion of the debt, and also assuming the resources, his portion of the resources, and I took credit for the amount of the resources over and above my liabilities.

" 'Q. What was Brown to get for his, in consideration of that agreement, what, just state the whole agreement again. A. He was to get; he was to have one-half interest in my butcher business, personal property and my book-accounts, and he was to assume his one-half interest of the liabilities.

" 'Q. What liabilities? A. That I owed at the time of the commencement of the partnership: debts that I owed to my creditors.

" 'Q. What was he to get out of the produce of the business from that time on? A. He was to have half of the profits, I supposed he was a full partner, a half interest.

" 'Q. What was the consideration he was to pay you for that arrangement? A. I was to have credit for the difference between the resources and liabilities of the business and what I put into it.

" 'Q. Was that arrangement made on a trip down to the river? A. I couldn't state what' day the arrangement was made. It was made prior to the 26th day of June.

" 'Q. . . . What did he say about the agreement? A. He was satisfied with it. He didn't make any objection to me. Went into the business and put his money into it.

" 'Q. Was anything said about these old debts of yours should be paid? A. I told him at the time that I would not take him in unless he would assume part of the debts and take his chances on the book-accounts the same as I had to. I couldn't close the business out and start in new, carrying on the business as it was, if he would.'

"It appeared that the list of accounts was made up shortly after July 27, 1910, showing the liabilities and assets, which was shown to Brown. At the beginning of the copartnership, the firm commenced to deal with its said creditors, paying off their indebtedness in money, or supplying them with meat, and in some instances making purchases from them. The evidence tends to show that Brown entered upon and continued the relation, upon the terms testified to by Stevens. . . .

"Appellant contends that Brown's assumption of Stevens' debts was after the formation of the partnership, and that this subsequent agreement would be an agreement to pay the debts of another, and must be established in compliance with the statute of frauds. Citing *Freeman* v. *Badgley,* 105 Cal. 373 [38 Pac. 955]. The evidence is that the assumption of Stevens' debt was part of the agreement and consideration, in forming the partnership. It is true that the assets and liabilities, or the names and amounts due each creditor, were not then definitely known, but the facts were to be made known by a statement being prepared, and was soon after made out and shown to Brown and acted upon by the firm as correct. . . .

"The facts here do not bring the case within the provisions of section 1624 of the Civil Code (statute of frauds), but within the exception mentioned in subdivision 2 of that section, to wit, the provisions of section 2794 of the same code."

12 California Jurisprudence, at page 869, under the title of "Statute of Frauds," states the rule thus: "Whenever a promise to answer to antecedent obligation of another, is

made upon a fresh consideration beneficial to the promisor, no matter from what source it may move, the promise is an original one, and valid, though oral.'' ·(Citing Civ. Code, sec. 2794, subd. 3; *Garraway* v. *Jennings,* 189 Cal. 97 [207 Pac. 554] ; *Fuller* v. *Towne,* 184 Cal. 89 [193 Pac. 88].)

Promises following within this rule are based upon a multitude of highly varied circumstances, as shown by this and following sections, and include a promise to pay the debt of another, made as a part of the settlement of an indebtedness existing between the promisor and the creditor.

At page 871, *supra,* it is said: ''The assumption of his proportionate share of the existing liabilities of a business by one entering into a partnership, as a part of the partnership agreement, is an original undertaking. It falls within the exceptions of section 2794 of the Civil Code, and may be sustained, though verbal, either as a promise made by one who has received property of another upon undertaking to apply it pursuant to the promise, or as a promise to pay the antecedent obligation of another, made upon a consideration beneficial to the promisor. But such a promise is within the statute, if it is made subsequently to the partnership agreement.''

The case of *Freeman* v. *Badgley, supra,* lays down this latter rule, that an agreement made after the partnership is formed, whereby the new partner agrees to assume the debts of the old firm, is an agreement to pay the debt of another, and must be established in compliance with the provisions of the Statute of Frauds. But this same decision holds that if the assumption of liability for the obligations of the old firm is part of the consideration given for an interest in the business, it is supported by the consideration of the original contracts.

The evidence relating to the partnership agreement between Waterman and Hill and the assumption of the obligations of the old firm is somewhat meager and indefinite,' but it must be borne in mind that the judgment here is one of nonsuit, given at the close of plaintiff's case, and with no rebutting evidence on the part of defendant.

Under such condition, every inference and presumption that can be drawn from the evidence of plaintiff, must be drawn in his favor. And it cannot be said in this case that the evidence of the defendant Waterman does not

tend to support the contention that defendant Hill, subsequent to the execution of the sales contracts, entered into a partnership with Waterman for the express purpose of taking over and carrying out these sales agreements, and that as part of the consideration for the partnership agreement he assumed obligation on the part of the new firm to carry out the terms of these sales contracts. (9 Cal. Jur., p. 551, sec. 35, and citations.)

This liability being assumed, we think it is clear that it was unnecessary under the circumstances of this case, for the plaintiff to allege or prove a tender of the unpaid installments on the purchase price of the lands before bringing suit to recover installments paid.

It appears from the undisputed evidence that after Waterman and Hill had assumed and taken over these contracts and entered upon the work of planting and improving the lands, they discontinued and abandoned the same, notified the vendees that they could not carry out their agreement of sale, permitted the property to revert to its barren and uncultivated condition, and expressly released them from any default in future payments.

This constituted a waiver of further performance or tender of performance on the part of plaintiff. (Civ. Code, sec. 1511, subds. 1, 3; *Merrill* v. *Merrill,* 95 Cal. 334 [30 Pac. 542]; *Seals* v. *Davis,* 25 Cal. App. 68 [142 Pac. 905]; *Duncanson* v. *Walton,* 111 Cal. 516 [44 Pac. 174].)

As the question of defendant Hill's personal liability to plaintiff in this action remains to be determined on a new trial, it is unnecessary to determine whether he holds the forty acres of land, a part of the tract contracted to be conveyed to plaintiff and her assignors, in trust for the contract holders or as an asset of the partnership.

The judgment of nonsuit is reversed and the case remanded for a new trial.

Barnard, J., and Marks, J., concurred.