[Civ. No. 10761. First Appellate District, Division One.—February 29, 1940.]

WINE PACKING CORPORATION OF CALIFORNIA (a Corporation), Respondent, v. WILLIAM VOSS, Appellant.

Rosendale & Thomas and John P. Muller for Appellant.

Jack H. Glines and David F. Hart for Respondent.

GOODELL, J., *pro tem.*—This action was brought against the appellant and several fictitious defendants doing business as La Colma Wine Company upon an open book account for

goods, wares and merchandise alleged to have been sold and delivered to them at their special instance and request and for which, it was alleged, the defendants promised and agreed to pay. C. H. Mitchell was substituted for one of the fictitious defendants notwithstanding he had died a fortnight before the action was commenced. Judgment was rendered against the appellant William Voss "as a surviving partner of the La Colma Wine Company and individually" for $1533, the amount sued for, and from that judgment he appeals.

The account was for wine and cooperage bought by said C. H. Mitchell while he was engaged by himself in the wine business in Salinas, during the months of October, November and December, 1936 (except $250 thereof which represented 125 cases of wine at $2 a case, sold and delivered after the partnership was formed). About February 1, 1937, Messrs. Voss and Mitchell, the court found, became partners, and the appellant was held upon the theory that when this partnership was formed he became responsible for the indebtedness of $1533, the major part of which had been incurred by Mitchell. The liability of an incoming partner is defined by section 2411 of the Civil Code as follows: "A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that this liability shall be satisfied only out of partnership property." This action, however, was not brought under section 2411 with a view to collecting the debt "only out of partnership property", nor was it tried, nor were the findings or judgment drawn, upon that theory. The complaint sought, and the judgment awarded, a money recovery against the appellant, unrestricted by partnership property, and the net result of the trial court's decision is that the appellant, by reason of the partnership relation, was compelled to assume *as a personal obligation* indebtedness contracted by Mitchell some weeks before the partnership was even a subject of discussion.

The first point raised by the appellant is that there is not sufficient evidence to support the finding that a copartnership existed. There were no written articles, and in such case the existence of a copartnership "must ordinarily be determined from the transactions, conduct and declarations of the alleged partners". (*Swanson* v. *Siem,* 124 Cal. App.

519, 523 [12 Pac. (2d) 1053].) The following facts appear without conflict: The appellant carried on a beer distributing business in Salinas, and Mitchell opened negotiations about February 1, 1937, by suggesting that he and appellant combine their businesses and carry on together, either as a copartnership or a corporation. When told by Mitchell that his wine business needed about $2,000 more capital, appellant at once wrote his check for $500, a few days later gave Mitchell a further check for $500, and several days thereafter went on a $1,000 note at the bank with Mitchell. No evidence of indebtedness, or security of any kind was given. A commercial account had stood in Mitchell's name, and early in February appellant signed a signature card with Mitchell at the bank for the carrying on of this old account in the new names; checks thereon could be drawn by either of them. During February appellant moved some of his stock of beer into the wine store, and the two parties agreed upon a division of the territory which each should cover in the selling of beer. The wine store had been under lease to Mitchell; a new lease was made as of February 1, 1937, running to C. H. Mitchell and William Voss (without, however, describing them as partners), and appellant promptly started the construction of a warehouse on the leased premises. One of appellant's beer trucks was painted over in the name of La Colma Wine Company and was used in the new enterprise. Mitchell continued in the management of the wine business and appellant did not busy himself very much with it.

We have not by any means attempted to summarize all the evidence upon this subject, but have simply given some of the factors which fairly and reasonably may be taken into consideration in determining whether or not there is a partnership. In addition to those facts there was testimony that Mitchell introduced appellant as his partner, and that after Mitchell's death appellant admitted that he and Mitchell had been partners. Appellant testified that it was the intention of Mitchell and himself to share the profits equally and to form a corporation, each to have an equal number of shares. Indeed they were to have had a meeting on the afternoon of March 17, 1937, to take steps toward incorporating, but Mr. Mitchell died suddenly on the morning of that day.

We are satisfied that the acts and conduct of the parties support the finding that a partnership existed from about February 1, 1937, until Mitchell's death. It is true the appellant testified that there was no intention to form a partnership, at least not until a later time, and it is argued by appellant that the occurrences already related were mere preliminaries; but whether or not there is a partnership is not a question of the undisclosed intention of the parties, or even of the words they use. (*Black* v. *Brundige*, 125 Cal. App. 641, 645 [13 Pac. (2d) 999]; *Martin* v. *Peyton*, 246 N. Y. 213 [158 N. E. 77, 78].) On all the evidence it might well be conceded that the trial court could have found the other way, but in a case such as this, where, to say the least, the evidence is susceptible of two constructions and there is substantial evidence to support the finding made, such finding cannot be disturbed on appeal.

█ The court made a finding that (with the exception of the said 125 cases of wine sold after February 1, 1937) all the merchandise was sold and delivered to Mitchell between October 16, 1936, and February 1, 1937, and that on or about February 1, 1937, appellant purchased a partnership interest equal to Mitchell's; that the interest acquired by appellant was beneficial to him and "that the said defendant William Voss and the said C. H. Mitchell, as a part of the transaction of acquiring said business of La Colma Wine Company as a copartnership business that the said copartnership did assume and undertake liability for outstanding debts and obligations of the business theretofore conducted by the said C. H. Mitchell",—and more particularly the account sued on.

The appellant does not question the finding that the major part of the merchandise had been sold to Mitchell before the partnership, but he does challenge the sufficiency of the evidence to support the remaining parts of the finding.

From a reading of the finding it is clear that the copartnership, and not the appellant, is held to have made the assumption and that the assumption is held to have been made as an "original obligation" (see, sec. 2794, Civ. Code), for it is distinctly said that it was "part of the transaction of acquiring said business". The inquiry, then, should be confined to the circumstances surrounding the formation of the partnership, for it is of that time that the finding speaks, and was doubtless intended to speak. As there were no writ-

ten articles, no light is to be derived from that source. There could have been no finding, under the evidence, of any active participation by appellant in the making of any promise of assumption for the record shows by uncontradicted testimony that at that time he knew nothing about Mitchell's indebtedness to respondent and nowhere in respondent's brief is any claim made that appellant himself made this promise. If, then, appellant is to be held individually for this antecedent debt because of an assumption made by the *copartnership* and not by himself, it must be on one of two theories: either that he is bound by something said or done by his partner without his knowledge or consent; or that the bare fact that he bought into a going business which owed money, automatically fastened upon him liability for such old indebtedness (payable out of his own pocket and not recoverable only out of partnership property—sec. 2411, Civ. Code).

The latter theory seems to be the one upon which respondent relies, judging by this statement of its position in its brief: "it is respondent's contention that appellant William Voss became obligated to pay the account sued on by the respondent *by reason of his entry into a copartnership agreement with C. H. Mitchell . . .* under which agreement he became a co-owner of the business . . ." Again respondent claims that appellant became obligated *"by reason of his entrance into a copartnership arrangement"* and that "on coming into the business as a copartner" appellant *"acquired an interest of value, in the property of the La Colma Wine Company, which was sufficient consideration for his individual liability on this obligation* in addition to his joint liability thereon to the extent of the partnership property". (Emphasis ours.)

Not only is no authority cited by respondent to support this theory of automatic assumption, but the authorities are all the other way.

The general rule is stated by Bates, in his Law of Partnership, sec. 507, as follows: " . . . A person becoming a member of an existing firm, or forming a partnership with another in the latter's existing business, does not thereby become liable for the debts already incurred, nor does the new firm become liable for them. An agreement, express or implied, is necessary to create such liability, not only between the creditors and the new firm but also as between the partners; that is to say, the presumption is against the assump-

tion of such liability, and the burden to prove it is upon the one who asserts it . . . '' (See, also, Rowley, Modern Law of Partnership, sec. 270, and Story on Partnership, 6th ed., sec. 153.)

In a rather old case, *Shirreff* v. *Wilks*, 1 East. 48 [102 Eng. Reprint, 19],—one essentially parallel to the case at bar— Lord Kenyon says: ''It is hard enough for one partner in any case to be able to bind another without his knowledge or consent; but it would be carrying the liability of partners for each other's acts to a most unjust extent if we suffered a new partner to be bound in this manner for an old debt incurred by other persons.'' Authorities could be multiplied on this subject but it is sufficient to cite an 83-page annotation subjoined to the case of *Stephens* v. *Neely*, 161 Ark. 114 [255 S. W. 562, at 45 A. L. R. 1236, 1240–1323, and particularly at p. 1262]. In the Arkansas case the reason for the rule is thus given: ''The credit of a new member of a firm does not enter into the consideration of the creditors of the old firm, and it would be manifestly unjust to hold the new partner liable unless he, by an express or implied agreement, assumed the debts of the old firm.'' Very much to the same effect is *Wolff* v. *Madden*, 6 Wash. 514 [33 Pac. 975]. The authorities are numerous to the effect that the mere act of joining or forming a partnership does not automatically fasten liability for an old debt upon the partner who did not contract it, in the absence of statute. Indeed the case of *First Nat. Bank* v. *Simmons and Hall*, 98 Cal. 287 [33 Pac. 197], so holds (citing therein *Smith* v. *Millard*, 77 Cal. 440 [19 Pac. 824]; Lindley on Partnership, 2d Am. ed., marg. 205 et seq.)

▇▇ As already indicated, and as the language of the finding suggests, respondent relies upon section 2794 of the Civil Code, which reads: ''A promise to answer for the obligation of another . . . is deemed an original obligation of the promisor, and need not be in writing: . . . 3. Where the promise, being for an antecedent obligation of another, is made . . . upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person; . . . ''. The difficulty is, that there is nothing in this record showing any such original promise by appellant. There is no evidentiary support for the finding just discussed.

■ The second instance in which the court found an assumption was with respect to the conversation of March 8th,— five weeks after the partnership was formed. Under the holdings in *Freeman* v. *Badgley*, 105 Cal. 372 [38 Pac. 955], *Stover* v. *Stevens*, 21 Cal. App. 261 [131 Pac. 332], and *Wood* v. *Waterman*, 102 Cal. App. 516 [283 Pac. 143], such a promise subsequent to the original transaction would, if made, require a fresh and independent consideration. This finding is barely touched upon in the respondent's brief. In this finding the appellant is held to have personally made the promise. It reads: "that . . . on or about March 8, 1937, the said William Voss did promise and agree with the plaintiff corporation, through its duly and regularly constituted agent, to pay the balance on the aforesaid open book account, upon the consideration that plaintiff execute documents necessary to release from quarantine a certain lot of wine charged to the La Colma Wine Company and constituting an item in the aforesaid open book account; . . . that the said William Voss did then accept the wine so released from quarantine, and did thereupon issue to the plaintiff corporation a check" for $217.37.

The evidence touching this March 8th incident shows a very vague and general "promise" made by *Mitchell*, who had contracted the debt and was already clearly bound to pay it, *and no promise at all made by the appellant*. The vice-president of respondent corporation testified that he called at the wine store on March 8th, at which time appellant was introduced to the witness by Mitchell as Mitchell's partner. Mitchell then said that they were going to join in the wine business, that appellant had $500 in the business, and "with his money and my ability to sell wine, we can go some place, and I hope we can get your account cleaned up right now because we want to buy wine". Mitchell then wanted to know if respondent would release certain wine then quarantined by the State of California and it was agreed that respondent would effect its release if a payment could be made. Thereupon a postdated check for $217.37, signed La Colma Wine Company, by C. H. Mitchell, was given to respondent's vice-president. The wine was promptly released from quarantine and the check was later dishonored. No claim is made by the respondent's vice-president that he ever talked to appellant about the account until March 22d, which was two

weeks after the conversation in question and five days after Mitchell's death had terminated the partnership. This is all there is in the record touching any promise on March 8th. A more or less general promise was made by Mitchell, but no part was taken in the conversation by appellant except to be introduced as a partner. Unless a promise to answer for Mitchell's debt can be inferred from the fact that appellant was present and heard what Mitchell said with respect to Mitchell's own debt (see, *Wolff* v. *Madden, supra,* p. 515), then there is no basis whatever for this finding that ''on or about March 8, 1937, the said William Voss did promise and agree . . . to pay the balance'' of the old account.

■ The third instance in which the court found an assumption was as follows: '' . . . that during the fore part of April, 1937, defendant William Voss promised and agreed with the plaintiff corporation, through its duly and regularly constituted agent that in consideration of the plaintiff corporation desisting from and postponing and refraining from the filing of an action against William Voss, surviving partner of the said La Colma Wine Company, and William Voss, individually, that the said defendant William Voss would take care of and pay the above open book account; that it is true that the plaintiff corporation did desist and refrain from filing said suit, in reliance upon said promise of defendant William Voss, at said time as was intended and planned by the officers of the plaintiff corporation.'' The witness, D. C. Glines, vice-president of respondent corporation, was asked: ''Q. Did you have any conversation with him [Voss] subsequent to March 22, 1937'', and he answered, ''Well, it was some time in April I had a discussion with him'' in Attorney Rosendale's office. ''Or the end of March''. He testified further: ''I asked what he was going to do with the account and he said if we would be patient he knew they could work it out and to help out some if we would take back [certain merchandise] . . . and I told him I didn't want to take it upon myself to say we would take it back unless he would assure me of the balance of the money, and then about that time we were interrupted and came down to see his attorney and then all partnership was denied and when we came out we were not talking any more about it.''

W. E. Schlink, president and manager of the respondent corporation, testified that he went to Salinas with D. C. Glines

"somewhere around the first or second or third of April, the early part of April"; that he told appellant that he had come purposely to start suit against him as a copartner and that appellant replied: "Schlink, if you will just wait a few more days we are going to begin to get out of the whole thing. I will personally guarantee you, we will take care of your account if you will just be patient and wait a few days". To this Schlink answered: "We have already been very patient with you in the matter of the payment. You have made certain promises. They have not been kept. We can't afford to wait longer. However, if you have any plan you care to submit to us, all right". Appellant then suggested that they go to his attorney's office and discuss his plans, and they did so. The witness was then asked: "Q. Mr. Voss made the statement you said he would take care of the account? A. Mr. Voss agreed that if we would be patient and wait a few more days until they had time to get through with the reorganization of their company, he would personally guarantee payment and see it was paid." On that day they went to the office of appellant's attorney, Mr. Rosendale, and, the witness continued, "we attempted to discuss with Mr. Rosendale the possibility of working out the plan that Mr. Voss had told me that they had in contemplation . . . and Mr. Rosendale refused to enter into much of a discussion regarding it, telling us it would be several days time before anything could be done and suggested to Mr. Voss that he keep in touch with me, or get in touch with me as soon as he, Rosendale, had given him further information regarding the proposed plan . . . We mentioned to Rosendale that we were willing to wait a few more days because of the fact that Mr. Voss had admitted to me that he would take care of the obligation, and, also because of the fact we had information a copartnership existed . . . ".

The testimony just quoted shows that Mr. Schlink went to Salinas "purposely to start suit" and that it was around the 1st, 2d or 3d of April. In 1937, April 1st fell on Thursday, the 3d on Saturday, and the 5th on Monday. The record shows that the complaint was verified on the 3d and filed on the afternoon of Monday, the 5th.

In some states it is the law that where there is a request to forbear it is not necessary that such request be accepted, since a unilateral contract, when established by performance,

becomes as binding as a bilateral contract; in other words, an agreement by the promisee to forbear is unnecessary (see annotation, 74 A. L. R. 293, 298). The California rule, however, is stated in 6 California Jurisprudence, 173, section 119, as follows: "But the mere forbearance to sue without agreement to forbear, or the mere act of forbearance if not given for the promise, does not constitute a consideration." The rule in California seems also to be the prevailing rule (74 A. L. R. 293–298). The cases in this state, as elsewhere (74 A. L. R. 301), hold that the promise to forbear may be implied as well as express. (*Whelan* v. *Swain,* 132 Cal. 389 [64 Pac. 560]; *Drovers' Nat. Bank* v. *Browne,* 88 Cal. App. 716 [264 Pac. 265].)

Even under the rule most favorable to respondent that there need be no promise by the creditor to delay or forbear, actual forbearance for a reasonable time is the very minimum that a debtor gets in return for his new promise. In this case the dates speak for themselves in that regard, particularly in view of the fact that the delay requested by appellant was "until they had time to get through with the reorganization of their company" according to respondent's own testimony. Certainly from the testimony of Messrs. Glines and Schlink, it cannot be said that there was an implied promise to forbear for *any* period of time, however short. And if, by any possibility, such implied promise could be found, the precipitate filing of the action shows a breach of such promise. That there was no express promise to delay or forbear for any definite period of time, even an hour, or for a reasonable time, is perfectly clear from the record. Moreover, no such promise (express or implied) on the part of respondent is found to have been made. In the case of *Tiffany & Co.* v. *Spreckels,* 202 Cal. 778, 789, 790 [262 Pac. 742], the court said: "The only possible claim it can make is that it suffered a detriment by forbearing to sue Mrs. Spreckels for the purchase price of the pearls and agreeing to accept payment of their purchase price in installments as set out in the writing signed by Spreckels. Had Tiffany & Company by any valid agreement bound itself not to sue upon its claim against Mrs. Spreckels for a period of time, no matter how brief, in consideration of Spreckels agreeing to pay its claim against Mrs. Spreckels, such an agreement on its part would have been sufficient to support Spreckels' engagement to pay their

claim, . . . There is no evidence, however, of any such an agreement by Tiffany & Company. The writing of September 20, 1920, was prepared by the solicitors of Tiffany & Company and contains no references to any engagement by Tiffany & Company to extend the time of payment of their claim against Mrs. Spreckels or to accept the agreement of the Spreckels to pay the same in installments. So far as this writing affected the rights of Tiffany & Company to proceed against Mrs. Spreckels, it (Tiffany & Company) could have instituted action the day the writing was signed against Mrs. Spreckels to recover the purchase price of the pearls. The fact that it did forbear to sue without any agreement of forbearance does not constitute a consideration (*Estate of Thomson,* 165 Cal. 290 [131 Pac. 1045]; *Commercial Bank* v. *Redfield,* 122 Cal. 405 [55 Pac. 160, 772]; *Shadburne* v. *Daly,* 75 [76] Cal. 355 [18 Pac. 403].)'' The applicability of this language to the instant case is obvious. Other California cases to the same effect are: *Smith* v. *Compton,* 6 Cal. 24; *Pacific Imp. Co.* v. *Maxwell,* 26 Cal. App. 265 [146 Pac. 900]; *Parrino* v. *Rallis,* 116 Cal. App. 364, 366 [2 Pac. (2d) 515]. We are satisfied that there is no support in the record for the *f*nding last discussed.

■ The second count of the complaint alleges that on or about March 21, 1937, an account was stated between plaintiff and the defendant*s* (Mitchell had died four days before) for $1533, no part of which had been paid. The court found, however, that on or about March 21, 1937, an account was stated, not between plaintiff and defendant*s* as alleged, but between plaintiff and *''William Voss,* surviving partner of the defendant copartnership doing business under the firm name and style of La Colma Wine Company'' for $1533.37. (Emphasis ours.) The case of *Stimson Mill Co.* v. *Hughes Mfg. Co.,* 8 Cal. App. 559 [97 Pac. 322], is relied upon by appellant, and the respondent has made no attempt to show that it is inapplicable. Under the doctrine of that case this appellant cannot be held on an account stated unless there had been between him and plaintiff ''previous transactions of a monetary character''. There had been no debtor-creditor relationship between them before this time (1 Cal. Jur. 191, sec. 48) and this ''cannot be made the instrument to create a liability where none before existed''. (See, also, *Dawson Terminals Co.* v. *Rosenberg,* 63 Cal. App. 489, 491 [218 Pac.

782]; *McClenahan* v. *Keyes*, 65 Cal. App. 467, 473 [224 Pac. 241]; *Swim* v. *Juhl*, 72 Cal. App. 363, 365 [237 Pac. 552]; *Bennett* v. *Potter*, 180 Cal. 736, 746 [183 Pac. 156].)

The appellant presents several other points, among them (a) that there is a fatal variance between pleadings and proof, (b) likewise between pleadings and findings, (c) that the judgment is based upon guaranty or novation, which are without the issues, and (d) certain claimed erroneous rulings in the admission of evidence. It is plain to be seen that it is unnecessary to discuss these points in view of our conclusion that there is no evidence in the record to sustain the findings to the effect that there was an assumption of this indebtedness by the appellant or by the copartnership with his knowledge or consent, and none to sustain the finding of an account stated.

The evidence showed and the court found that *after* Mitchell and Voss had formed their partnership on February 1, 1937, the respondent shipped to La Colma Wine Company 125 cases of wine at $2 a case. Clearly; the respondent is entitled to a judgment against appellant *individually,* as well as against the partnership property, for this $250 (and interest thereon from time of delivery) but, as already indicated, respondent is not entitled to a *personal* judgment against appellant for anything over or above that sum. It was stipulated at the oral argument that the respondent was and is entitled to a judgment against appellant *limited and restricted to its satisfaction only out of partnership property* for the remaining $1483 (viz., after deducting said $250) together with interest thereon.

The judgment appealed from is reversed with directions to the trial court to make findings and enter judgment thereon in accordance with the views herein expressed. Appellant to recover his costs on appeal.

Peters, P. J., and Ward, J., concurred.