[Civ. No. 3289. Fourth Dist. Jan. 18, 1945.]

HOWARD E. LYTLE, Respondent, v. G. C. KROENKE et al., Appellants.

John R. Barta and Harvey, Rimel & Harvey for Appellants.

Roland Thompson and George E. Bradley for Respondent.

MARKS, J.—This is an appeal from a judgment striking a balance of accounts between plaintiff and defendants and awarding plaintiff judgment for the amounts to become due him.

Plaintiff was a general contractor duly licensed in California. Defendants were husband and wife and had been engaged in the business of erecting houses for sale in San Bernardino and elsewhere. They owned, or acquired, as joint tenants, lots in Orange and Los Angeles Counties upon which they proposed to continue that business.

Plaintiff and Mr. Kroenke first met in the fall of 1941. At that time plaintiff was doing business as a cement contractor. He learned that Mr. Kroenke proposed to build a number of houses in Santa Ana and saw him at his home in Los Angeles in an endeavor to secure the contract for the cement work. According to plaintiff, Kroenke proposed that they enter into a partnership for the purpose of erecting houses for sale, dividing the net profits equally.

Kroenke was completing a number of houses in Santa Ana and employed plaintiff to finish the cement work which had been abandoned by the original subcontractor. The two men

had various conversations concerning the proposed partnership which, according to plaintiff, resulted in an oral agreement between them. According to its terms Kroenke was to obtain the lots on which to build, together with the building loans, attend to the necessary financing, obtain the building permits, contract for the materials, let the subcontracts, keep the accounts, pay the majority of the bills and supervise the selling. Plaintiff was to furnish tools, his truck and machinery, supervise construction and work on the jobs. The net profits were to be divided equally. This was modified by a later agreement whereby plaintiff was to receive one-third of the net profits from building operations in Los Angeles County.

Defendants owned five lots in or near Hawthorne in Los Angeles County which were valued at $150 each. To keep the workmen in the employ of plaintiff busy it was decided to build on these lots. Construction started about February 20, 1942, plaintiff and Kroenke each performing the respective duties imposed by their agreement.

The building permits were issued in the names of Kroenke as owner, and Fred A. Chapin as contractor. Plaintiff questioned this use of Chapin's name as contractor as soon as he learned of it. He was told by Kroenke that Chapin was the owner of lumber yards and a licensed contractor with good financial rating; that he could secure more liberal loans from corporations financing the work by the use of the name of a contractor such as Chapin. This seemed to satisfy plaintiff who made no further complaint concerning the form of the future building permits.

Chapin testified that he received $25 on each house built; that he visited the scenes of construction a few times; that he paid the unemployment insurance and social security on payrolls furnished by Kroenke who advanced the charges at the time he submitted the payrolls.

By mutual consent plaintiff was given a drawing account of about $30 a week to pay his living expenses. A bank account was opened on which both plaintiff and Kroenke could draw checks. This account had an average balance of about $300 and only the smaller bills were paid from it. The larger bills were paid by Kroenke by checks drawn on another account.

Kroenke purchased thirteen lots in Corona del Mar in the city of Newport Beach in Orange County at the average cost

of $200 each. Before the Hawthorne houses were entirely completed construction was started at Corona del Mar and nine houses were completed there before August 1, 1942. Because of the difficulty in obtaining priorities no further building was undertaken and plaintiff testified that the partnership was discontinued by mutual consent.

All of the houses in both locations were sold at a profit and sometime in August, 1942, plaintiff requested an accounting. He described his conversation in San Bernardino with Kroenke on about August 8, 1942, as follows:

"I asked Kroenke in what shape the papers were in regard to our Hawthorne job and he said, 'Why?' I said, 'It must be settled by now and I have some paper coming. If we can get an accounting I can go back to work and get into defense work or something.' He said, 'You don't have any money coming.' I thought he was joking. I said, 'What do you mean, Mr. Kroenke, I don't have any money coming?' He said, 'Howard, you know the only money you were supposed to get was what you could save between the cost of the houses and the loans, if you could build the houses cheaper than what the loans was you would get the difference.' I still thought he was joking. I said, 'Kroenke, you don't mean that, you know better, you know me better than that. You couldn't expect me, knowing what I do about building to enter into such a contract. It would be ridiculous, and considering that you knew about the building I had done before in my own right, you know such an idea was not only not ever spoken of, but impossible.' We discussed it for about half an hour. He said, 'Well, Howard, if you feel that way about it, I guess you are right and we will settle up the way you say.' He said it would take him probably a week to get the books up to date and he would let me know and share the profits with me on the sale of the houses."

There is some corroboration of this in the testimony of another witness concerning a later conference between plaintiff and Kroenke relating to an accounting in which the following appears: "He (plaintiff) said, 'You told me in San Bernardino you would settle up as we originally said.' He (Kroenke) said, 'I have changed my mind on that, you can sue me if you want to.'"

As Kroenke had repudiated the partnership agreement plaintiff brought this action naming Kroenke as the sole de-

fendant. Kroenke's deposition was taken and it then appeared that Mrs. Kroenke was his partner in all business transactions including all building operations. An amended complaint was filed joining her as a defendant.

Kroenke testified during the trial that he was fully authorized to represent his wife in all business transactions; that she knew of the building operations here involved. She signed deeds of trust on the fourteen lots to secure money with which to finance building the houses. Title to the lots was taken in the names of both defendants as joint tenants.

Kroenke flatly denied the testimony of plaintiff as to the formation of the partnership and the proposed division of the profits. He further testified that the compensation promised plaintiff for the use of his truck, cement mixer, tools, and for his labor and services was the saving, if any, between the amount loaned by the building and loan association and the cost of the completed house. He also testified there was no such saving as the cost of the house, lot and incidental expenses in each instance exceeded the amount of the loan.

The trial court found all facts in favor of plaintiff and gave him judgment for one-third of the net profits from the Hawthorne houses, and one-half of the net profits from the Corona del Mar houses, to be paid when those profits accrue.

Defendants urge that the evidence is insufficient to establish either an agreement of partnership or joint enterprise between plaintiff and defendants under which plaintiff would be entitled to receive any portion of the profits from the sale of the houses. They cite cases from other jurisdictions in support of the rule which they state as follows: ''In the absence of a written agreement a person who alleges a partnership between himself and another is bound to establish its existence by clear proof.''

Plaintiff and Kroenke were the only witnesses who claimed to have any direct knowledge of the agreement between them. We have studied their evidence and agree with the following comments of the trial judge on their credibility and the weight to be given their testimony:

''And from the very first I was impressed with the fact that the plaintiff was telling the truth, . . . Reading between the lines, you could see that this plaintiff was, at least, thoroughly convinced that he had had a conversation with Mr. Kroenke and that it was understood that he was to get one-

third of the profits off the job in Lawndale and one-half of the profits of the Corona del Mar job, and would be ridiculous otherwise to me. I may not have a very good idea of Southern California finance and the way of the money changers in the temple here, but to say a man was doing all he did just to get the questionable possibility of the difference between what financial institutions like these in Southern California would loan on a place and the cost of construction, I can't understand that. It might be done in Southern California, and there might be a little difference, but a man of the intelligence and apparent ability of this plaintiff certainly wouldn't get into a ridiculous proposition like that, but I kept my mind open until I heard the testimony of Mr. Kroenke. I am not saying that he falsified his testimony, but it certainly is full of contradictions, and the more he testified, the more I became convinced that I was right.''

We have here the familiar situations of a sharp conflict in the evidence which the trial court has resolved in favor of plaintiff. Under such circumstances the findings settle the question as far as this court is concerned. (*Wine Packing Corp.* v. *Voss*, 37 Cal.App.2d 528 [100 P.2d 325].)

■ It is next urged that the judgment against Mrs. Kroenke cannot be supported because she did not know of the partnership and did not personally consent to its formation, citing subdivision ''g,'' section 2412, Civil Code, and 47 Corpus Juris, sections 45 and 569.

It is true that the evidence fails to show that Mrs. Kroenke personally and individually gave her consent to the formation of the partnership with plaintiff. However, the testimony of Mr. Kroenke to the effect that he had full authority to represent Mrs. Kroenke in all business transactions affecting her stands uncontradicted. We can see no reason why the consent of a person to the formation of a partnership may not be given by a duly authorized agent.

■ Defendants argue that there is a fatal variance between the allegations of the amended complaint, which alleges the formation of a partnership, and the findings, which did not specifically and by that name find the formation and existence of such a partnership. However, the trial court did find in considerable detail the facts showing the formation of a partnership and drew the proper conclusion from the facts found, determining and settling the rights of the part-

602

ners in its assets. We can find no sufficient variance between the pleadings and findings to justify a reversal of the judgment.

Lastly it is urged that the judgment is insufficient because it does not decree a dissolution of the partnership.

A partnership may be dissolved by the mutual consent of the partners. (Civ. Code, § 2425; *Shuken* v. *Cohen,* 179 Cal. 279 [176 P. 447].) The undisputed evidence shows that the partnership was dissolved by mutual consent about August 1, 1942. This being true all the trial court was required to do was to distribute its assets. This was done by the judgment in which we find no reversible error.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.